# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 18-354V
Filed: October 9, 2019

* * * * * * * * * * * * * *
CHERYL DOSTER-ANDERSON,    *      UNPUBLISHED
                          *
    Petitioner,           *
v.                        *      Decision on Attorneys' Fees and Costs;
                          *      Reasonable Basis
SECRETARY OF HEALTH       *
AND HUMAN SERVICES,       *
                          *
    Respondent.           *
* * * * * * * * * * * * * *

*Bridget McCullough, Esq.*, Muller Brazil, LLP, Dresher, PA, for petitioner.
*Alexis Babcock, Esq.*, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

**Roth**, Special Master:

On March 7, 2018, Cheryl Doster-Anderson ("Ms. Doster-Anderson," or "petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program.[2] Petitioner alleges that she developed Guillain-Barre syndrome ("GBS") after receiving an influenza ("flu") vaccination on October 2, 2015. Petition ("Pet."), ECF No. 1. Petitioner now seeks an award of attorneys' fees and costs.

---

[1] Although this Decision has been formally designated "unpublished," it will nevertheless be posted on the Court of Federal Claims's website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)). **This means the Decision will be available to anyone with access to the internet.** However, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public. *Id*.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

# I. Background

## A. Summary of Relevant Medical Records

Petitioner's prior medical history was significant for chronic abdominal pain, ulcerative colitis status post-colectomy and ileostomy, depression, anxiety, post traumatic stress disorder ("PTSD"), and tobacco use. Pet. Ex. 3 at 10.

Prior to receipt of the allegedly causal vaccine, petitioner was evaluated by her primary care physician ("PCP") on September 22, 2015 for ongoing nausea, vomiting, and sharp upper left quadrant pain that had persisted for over one month. *Id.* at 9. On September 27, 2015, petitioner presented to the Lake Bennett Health and Rehabilitation emergency department with complaints of persistent nausea and vomiting. Pet. Ex. 4 at 506-07. Petitioner was diagnosed with intractable nausea and vomiting, chronic abdominal pain with chronic narcotic use, and leukocytosis, likely reactive. *Id.* at 507. She was prescribed Rocephin, likely for a bacterial infection, and admitted to the hospital for further evaluation. *Id.* The next day, petitioner underwent a gastrointestinal ("G.I.") consultation with Dr. Kenneth Feuer who confirmed the diagnosis of acute abdominal pain. *Id.* at 499-504.

Petitioner received the allegedly causal influenza ("flu") vaccine on October 2, 2015 at a visit with an internal medicine physician while she was hospitalized for G.I. issues. Pet. Ex. 1 at 2; Pet. Ex. 4 at 510. During this visit, petitioner reported that most of her symptoms had resolved but she was still experiencing generalized weakness. Pet. Ex. 4 at 292-95.

On October 4, 2015, petitioner was discharged from the hospital and admitted to a rehabilitation center for "strengthening and unsteady gait." *Id.* at 508-13, 746. Petitioner returned to the emergency department on October 8, 2015 complaining of severe chest pain. *Id.* at 432-43. She was again admitted for observation and evaluated by a cardiologist the following day. *Id.* at 449-51. Petitioner's cardiologist, Dr. Nasir Rahmatullah, noted that petitioner had no previous cardiac history but presented with symptoms of ischemia. *Id.* at 450. Dr. Rhamatullah recommended that petitioner could be discharged from a cardiac standpoint. *Id.* at 451.

On November 8, 2015, petitioner returned to the emergency department reporting nausea, vomiting, and abdominal pain. *Id.* at 642-43. She stated her current symptoms "started gradually over the course of the last 24 hours" and were similar to what brought her to the hospital previously. *Id.* at 642. She was again admitted for observation. *Id.* at 643. She was discharged on November 13, 2015 and readmitted to a rehabilitation facility for skilled nursing due to her generalized weakness. *Id.* at 605, 632-33 Petitioner was discharged from the rehabilitation facility on December 28, 2014. *Id.* at 832. Petitioner was ordered to continue physical therapy and continue on her current medications. *Id.*

Petitioner presented to her PCP on December 29, 2015 to request a neurology referral "to confirm her diagnosis of neuropathy and to get started on a treatment plan for it." Pet. Ex. 3 at 19. Petitioner noted she had been experiencing sharp pain and tingling in her extremities for an undisclosed period of time. *Id.* She had been taking Neurontin and Lyrica but had not yet underwent a nerve conduction study to confirm a neuropathy diagnosis. *Id.* No overt weakness

was noted. *Id.* Petitioner also underwent an initial orthopedic evaluation by Dr. Jay Wright on the same day. Pet. Ex. 5 at 22-24. Dr. Wright noted decreased sensation in a bilateral stocking type distribution, with absent reflexes at the Achilles tendons. *Id.* Dr. Wright diagnosed petitioner with chronic abdominal pain, idiopathic peripheral neuropathy, low back pain, and long-term drug therapy. *Id.* at 24. He also recommended that petitioner undergo EMG/NCV studies. *Id.*

Petitioner underwent the EMG/NCV studies on January 15, 2015. Pet. Ex. 5 at 20-22, 25-27. The findings were consistent with a sensorimotor axonal and demyelinating polyneuropathy. *Id.* Petitioner returned to her PCP on January 26, 2016 who confirmed a neuropathy diagnosis. Pet. Ex. 3 at 33-36. Petitioner was evaluated by a neurologist, Dr. Rahul Dewan on February 2, 2016 regarding her "five month history[3] of numbness, tingling, and weakness in the extremities." Pet. Ex. 6 at 4. Petitioner reported her symptoms began in September 2015 when she was admitted to the hospital for nausea and vomiting. *Id.* Upon evaluation, Dr. Dewan assessed possibly acute inflammatory demyelinating polyneuropathy ("AIDP"), a form of GBS. *Id.* at 6. However, he also stated that "[s]ince she is now about five months out from her initial symptom onset and continues to have weakness, she may be developing a chronic form," known as chronic inflammatory demyelinating polyneuropathy ("CIDP"). *Id.* Dr. Dewan requested to review petitioner's EMG/NCV studies and hospital records "to see what kind of G.I. illness she was admitted for since there is some association with Campylobacter[4] and Guillain-Barre syndrome." *Id.* He also discussed petitioner's treatment options, including IVIG therapy. *Id.* Petitioner returned to Dr. Dewan on February 29, 2016 for follow up of her EMG/NCV studies. *Id.* at 8-10. After thoroughly reviewing petitioner's results, he stated that they suggested axonal and demyelinating neuropathy and again suggested IVIG therapy. *Id.*

On March 1, 2016, petitioner was admitted to the hospital to begin a five-day course of IVIG therapy. Pet. Ex. 6 at 23-26. On March 15, 2016, petitioner returned to Dr. Dewan who noted petitioner reported improvement with her lower extremity weakness and he noticed an increase in her bilateral lower extremity strength as well. *Id.* at 11-12.

Petitioner had another follow up visit with Dr. Dewan on May 16, 2016 during which she reported new symptoms of Restless Leg Syndrome ("RLS"). *Id.* at 14-16. Dr. Dewan noted these symptoms were likely caused by petitioner's ongoing iron deficiency she was being treated for.

On August 22, 2016, petitioner returned to Dr. Dewan for evaluation. *Id.* at 17-19. Dr. Dewan noted that while petitioner's symptoms had improved and she was now able to walk without a walker for further distances, she was experiencing fatigue in her legs the following day. *Id.* at 17. He also indicated that petitioner continued to experience decreased tone and absent deep tendon reflexes in her legs, diminished sensation in her feet, and a slightly antalgic, but stable gait. *Id.*

---

[3] This would place onset of petitioner's symptoms in mid-September, weeks before she received the allegedly causal flu vaccine.

[4] According to DICP medical personnel, "one of the strongest associations between an antecedent infections pathogen and subsequent GBS has been that of infection with the gastrointestinal bacterium *Campylobacter jejuni*." Resp. Report at 6, n.6.

Petitioner followed up with Dr. Dewan on December 16, 2016 reporting that while her leg strength had been improving, she was still experiencing numbness in her legs at times. *Id.* at 20-22. At this visit, Dr. Dewan noted he "suspect[ed] that [petitioner's] symptoms may be secondary to a chronic inflammatory demyelinating polyneuropathy – CIDP." *Id.* at 22. He also indicated petitioner had responded well to the IVIG therapy and that she was able to walk without any assistance from a walker. *Id.*

There have been no updated medical records filed in this matter.

**B.     Procedural History**

Petitioner filed her petition and several medical records on March 7, 2018.[5] Petition, Petitioner's Exhibits ("Pet. Ex.") 1-7, ECF No. 1. She filed a Statement of Completion on March 8, 2018. ECF No. 5. Respondent filed his Rule 4(c) Report on March 21, 2019. Respondent's Report ("Resp. Report"), ECF No. 16. In his report, respondent argued petitioner failed to satisfy her burden of proof under *Althen* prongs I and II as she did not provide evidence to support actual causation. *Id.* at 10 (citing *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274 (Fed. Cir. 2005)). Respondent pointed out that none of petitioner's treaters ever attributed her condition to her vaccination, but instead thought it was likely precipitated by a gastrointestinal illness. *Id.* (citing Pet. Ex. 2 at 3-4; Pet Ex. 6 at 6). Respondent further argued that onset of petitioner's symptoms occurred prior to her vaccination, and thus submitted that petitioner also cannot meet her burden under *Althen* prong III. *Id.* Respondent also identified several outstanding medical records. *Id.*

On the following day, March 22, 2019, petitioner filed a Motion to Voluntarily Dismiss pursuant to Rule 21(a). Motion, ECF No. 18. An Order Concluding Proceedings was issued the same day. Decision, ECF No. 19.

On June 30, 2019, petitioner filed an application for attorneys' fees and costs. ECF No. 22 ("Fees App."). Petitioner requested total attorneys' fees and costs in the amount of $7,002.10 (representing $6,379.10 in attorneys' fees and $623.00 in costs). Fees App. at 2. Pursuant to General Order No. 9, petitioner warranted that she did not incur any costs in pursuit of this litigation. *Id.* Respondent responded to the motion on July 2, 2019, stating "Respondent defers to the Special Master to determine whether the statutory requirements for an award of attorneys' fees and costs are met in this case." Response at 2, ECF No. 24. Petitioner did not file a reply thereafter.

This matter is now ripe for consideration.

---

[5] According to the billing records submitted with petitioner's fees application, petitioner's counsel began working on this case on October 31, 2016. Fees App. Ex. A at 1. Prior to the filing of the petition on March 7, 2018, petitioner's counsel's firm had spent several hours over approximately 18 months compiling and reviewing petitioner's medical record. *See id.* at 1-4.

4

## II. Applicable Law and Analysis

A. **Good Faith and Reasonable Basis**

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." § 15(e)(1). If a petitioner succeeds on the merits of his or her claim, petitioner's counsel is entitled to a reasonable attorneys' fee award. *Id.*; *see Sebelius v. Cloer*, 133 S. Ct. 1886, 1891 (2013). However, a petitioner need not prevail on entitlement to receive a fee award so long as the petition was brought in "good faith" supported by "reasonable basis." § 15(e)(1).

Inquiry into whether counsel brought a claim in good faith is a subjective inquiry that questions whether the attorney exercised adept professional judgment in determining whether a petitioner may be entitled to compensation. *Chuisano v. United States*, 116 Fed. Cl. 276, 286 (2014) (citations omitted). Here, respondent did not question petitioner's counsel's subjective good faith in bringing the claim. Therefore, petitioner's good faith requires no further analysis.

Reasonable basis is an objective standard determined by evaluating the sufficiency of the medical records in petitioner's possession at the time the claim is filed. "Special masters have historically been quite generous in finding reasonable basis for petitions." *Turpin v. Sec'y of Health & Human Servs.*, No. 99-564, 2005 WL 1026714 at *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005). However, the Federal Circuit recently denied an award of attorney's fees based on petitioner's lack of reasonable basis in *Simmons v. Secretary of Health and Human Services.* 875 F.3d 632, 636 (Fed. Cir. 2017). In *Simmons*, the Federal Circuit determined that petitioner lacked reasonable basis for filing a claim when, at the time of filing: (1) petitioner's counsel failed to file proof of vaccination, (2) there was no evidence of a diagnosis or persistent injury allegedly related to a vaccine in petitioner's medical records, and (3) the petitioner had disappeared for approximately two years prior to the filing of the petition and only resurfaced shortly before the statute of limitations deadline on his claim expired. *See id.* at 634-35. The Federal Circuit specifically stated that the reasonable basis inquiry is objective and unrelated to counsel's conduct prior to filing a claim. The Court consequently affirmed the lower court's holding that petitioner's counsel lacked reasonable basis in filing this claim based on the insufficiency of petitioner's medical records and proof of vaccination at the time the petition was filed. *Id.* at 636.

In light of *Simmons*, the Court of Federal Claims determined, "[I]n deciding reasonable basis[,] the Special Master needs to focus on the requirements for the petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery. . . Under the objective standard articulated in *Simmons*, the Special Master should have limited her review to the claim alleged in the petition to determine if it was feasible based on the materials submitted." *Santacroce v. Sec'y of Health & Human Servs.*, No. 15-555V, 2018 WL 405121 at *7 (Fed. Cl. 2018). When evaluating a case's reasonable basis, petitioner's "burden [in demonstrating reasonable basis] has been satisfied . . . where a petitioner has submitted a sworn statement, medical records, and [a] VAERS report which show that recovery is feasible." *Id.* Moreover, the special master may consider various objective factors including "the factual basis of the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282, 289 (2018).

5

In his Response, respondent "defer[red] to the Special Master to determine whether the statutory requirements for an award of attorneys' fees and costs are met in this case." Response at 2. Upon evaluation of the medical records filed with the petition, it appears that petitioner's claim lacked a reasonable basis for the duration of the claim. These records indicated that petitioner's treaters believed her symptoms to be related to her gastrointestinal infection she experienced prior to receipt of the flu vaccine. *See* Pet. Ex. 4 at 292-95, 432-43, 449-51, 508-13, 632-33. Further, petitioner was already hospitalized for G.I. issues and generalized weakness at the time she received the vaccine. Pet. Ex. 1 at 2; Pet. Ex. 4 at 510. She continued to experience ongoing G.I and neuropathic issues after the vaccination that were admittedly similar to the symptoms she experienced prior to the vaccine. Pet. Ex. 4 at 642-43. Additionally, on February 2, 2016, Dr. Dewan specifically attributed petitioner's neuropathy to the September 2015 G.I. infection. Pet. Ex. 6 at 6.

Reasonable basis "looks not at the likelihood of success" but rather "the feasibility of the claim." *Chuisano*, 116 Fed. Cl. at 286. The reasonable basis inquiry is "broad enough to encompass any material submitted in support of the claim at any time in the proceeding, whether with the petition or later." *Id.* at 287. Ultimately, petitioner's claim was not supported by the medical records filed. It is clear from even a cursory review of the records that petitioner's symptoms were more likely attributable to her ongoing G.I. issues that arose in the month prior to her receipt of the flu vaccine and thus, her claim was not feasible. Moreover, petitioner's counsel was in possession of this case for approximately 18 months prior to the filing of the petition and the billing records show time spent reviewing and summarizing the medical records during that timeframe. Fees App. Ex. A at 1. Petitioner should have realized that her symptoms were most likely related to her G.I. infection during the 18 months prior to the filing of the petition, but she failed to do so and continued to move forward with this case. Accordingly, I find that this case **lacked a reasonable basis** at the time of filing and for the entire duration of its pendency before the Court. Therefore, petitioner's request for attorneys' fees and costs is hereby **denied**.

### III. Conclusion

In accordance with the foregoing, petitioner's motion for attorneys' fees and costs is **DENIED**. The Clerk of the Court is directed to enter judgment in accordance with this Decision.[6]

**IT IS SO ORDERED.**

                                            **s/ Mindy Michaels Roth**
                                            Mindy Michaels Roth
                                            Special Master

---

[6] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.